# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1197V
UNPUBLISHED

| | |
|---|---|
| SUSAN MOGAVERO,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: May 12, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Theodore J. Hong, Maglio Christopher & Toale, PA, Seattle, WA,* for petitioner.

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC,* for respondent.

## **FINDINGS OF FACT**[1]

  On August 13, 2018, Susan Mogavero filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received in her left shoulder on September 23, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

  For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's left shoulder.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.      **Relevant Procedural History**

As noted, the matter was initiated in August 2018. A year later, on August 2, 2019, Respondent moved to stay the deadline for his Rule 4(c) report (ECF No. 21). Respondent stated that he had determined that Petitioner could satisfy all but one of the requirements for a Table SIRVA injury. *Id.* Specifically, although Petitioner alleged a left shoulder SIRVA from the flu vaccine administered on September 23, 2016, the record indicated that the vaccine was in fact administered in her *right* shoulder on that date. *Id.* (*citing* Ex. 1 at 3).

In reaction, Petitioner filed documentary materials in support of her claim. Thus, on October 7, 2019, Petitioner filed Exhibits 15-19, including an amended vaccine administration record, supplemental affidavits from Petitioner, her husband, and her sister, as well as a Vaccine Adverse Event Reporting System ("VAERS") form completed on November 20, 2016 (ECF No. 25). On November 25, 2019, Petitioner filed Exhibits 20-23 and a Statement of Completion (ECF Nos. 27-28).

On January 6, 2020, Respondent filed a status report stating that he had again reviewed the claim, including the newly-filed evidence, and that his position remained unchanged (ECF No. 29). On February 4, 2020, a status conference was held and the parties agreed that Petitioner would file a motion for a finding of fact (ECF No. 31). Petitioner did so on February 13, 2020 (ECFF No. 32), and Respondent reacted to the motion on March 11, 2020 (ECF No. 34). On March 18, 2020, Petitioner filed a reply (ECF No. 36). The issue of the site of Petitioner's September 23, 2016 flu vaccination is now ripe for resolution.

II.     **Issue**

At issue is whether Petitioner received the vaccination alleged as causal in her left arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

III.    **Authority**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

3

- Ex. 2 at 19, a record of Petitioner's October 12, 2016 visit to her Nurse Practitioner (NP) Nicolas for a chief complaint of "L arm pain s/p [status post, or following] flu shot 3 weeks ago." The record further states, "On 9/27/16 she was given a flu shot to her left deltoid."

- Ex. 2 at 4, a record of Petitioner's April 18, 2017 visit to Dr. Alberton for left shoulder pain noting that the "problem began 9/23/2016" and that her "pain started after she received a flu shot in the left shoulder."

- Ex. 5 at 17, a physical therapy patient intake form for left shoulder pain listing the date of injury as "9/23/16" and stating that a "flu vaccination" caused the present injury/symptoms.

- Ex. 5 at 19, December 8, 2016 record of a shoulder evaluation listing "Flu shot (9/23/16)" as the onset date and listing a diagnosis of "L deltoid strain."

- Ex. 8 at ¶ 2, Petitioner's affidavit, stating "I received an influenza vaccination in my left arm on September 23, 2016." Petitioner further explained that when the nurse came into the room to give her the flu shot on that date, the nurse asked which arm was Petitioner's dominant arm, to which she responded her right arm, and the nurse then gave the shot in Petitioner's left arm. *Id.* at ¶ 5. Petitioner also averred that she felt "sharp and aching pain in [her] left shoulder the moment [she] received the flu vaccination." *Id.* at ¶ 6.

- Ex. 15, Petitioner's supplemental affidavit, which is consistent with her original affidavit, Ex. 8, as to the site of vaccination. Specifically, Petitioner again averred that on the date of vaccination, the nurse asked her which arm was her dominant arm, and then administered the flu shot in her left arm, the opposite arm. Ex. 15 at ¶ 6. Petitioner further averred that she "immediately felt sharp and aching pain in my left shoulder the moment I received the flu shot." *Id.* at ¶ 7. Petitioner explained that when she arrived home, she told her husband "about the pain that I felt in my left shoulder following the flu shot that I was given earlier that day." *Id.* at ¶ 8.

- Ex. 16 at ¶ 7, affidavit of Petitioner's husband Dominic Mogavero, explaining that the evening of Petitioner's vaccination she had to lie on her right side to sleep rather than her left side as usual. He explained that he remembers this because "I sleep on the right side of the bed and Susan on the left side. We are both side sleepers whereby we face each other as we go to sleep because I naturally sleep on the right side of my body and Susan on the left side of her body. However, on the evening of September 23, 2016, we were not facing each other as we went to bed because Susan had to lie on her right side facing the wall." *Id.*

- Ex. 17 at ¶ 5, affidavit of Petitioner's younger sister Sonia Estrada, stating that on the weekend of either September 24-25 or October 1-2, 2016, Petitioner told her "that the flu shot she recently received in her left arm was

4

causing a lot of pain in her shoulder and arm. I recall her being visibly in pain that day because of her left shoulder." Ms. Estrada further averred that over the next several weeks, Petitioner "kept telling about the worsening pain in her left shoulder on a regular basis . . . . She would ask me to gently pull or hold onto her left arm so that she could stretch the arms in her left shoulder."

- Ex. 18, a VAERS form completed by Petitioner on November 20, 2016 (and thus two months post-vaccination), indicating "[r]eceived flu vaccination on 9/23/16 at 4:45PM. Left arm became sore and unmovable for the next two days."

Based on the above medical entries, the preponderance of the evidence supports a finding that Petitioner's September 23, 2016 flu vaccine was administered into her left deltoid. The record of Petitioner's October 12, 2016 visit to NP Nicolas for left shoulder pain, noting that her flu shot was given in her left deltoid (Ex. 2 at 19), is particularly persuasive. This record is from only 19 days after vaccination, and is the most contemporaneous record other than the vaccine administration record itself. This record is also persuasive because it records a visit to the same office where the flu vaccine was administered.

I acknowledge that the vaccine administration record *itself* memorializes administration of the flu vaccine in Petitioner's right deltoid. Ex. 1 at 3. However, all other medical records support a finding that the vaccine was actually administered in Petitioner's left arm. Moreover, I note that the original vaccine administration record includes other clearly inaccurate information, including an indication that the vaccine administered expired on January 1, 1900, and that the vaccine information sheet provided to Petitioner was published on January 1, 1900. Pet. Ex. 1 at 3. And the health care provider has now amended the vaccine administration record to indicate that the vaccine was administered into Petitioner's left deltoid. I find this further supports the additional records indicating that the vaccine was administered into Petitioner's left deltoid.

Accordingly, preponderant evidence establishes that the vaccination alleged as causal in this case was more likely than not administered to Petitioner in the left deltoid on September 23, 2016. Petitioner's motion for a finding of fact on this issue is granted.

### V.     Scheduling Order

**Respondent shall file, by no later than <u>Thursday, June 11, 2020</u>**, a status report concerning how he intends to proceed, or his unfiled Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

5